In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3164

MCGARRY & MCGARRY, LLC,

*Plaintiff-Appellant,*

*v.*

RABOBANK, N.A.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 C 5978 — **Milton I. Shadur**, *Judge.*

ARGUED JANUARY 5, 2017 — DECIDED JANUARY 26, 2017

Before POSNER, MANION, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* Bankruptcy Management Solutions, Inc. ("BMS" for short) provides a variety of administrative services, including software and banking services, to bankruptcy trustees. See www.google.com/?gws_rd=ssl#q=Bankruptcy+Management+Solutions%2C+Inc (visited Jan. 26, 2017). It is not a bank, but it uses a bank, Rabobank, N.A., as the depositary for the banking services that BMS provides to bankruptcy trustees through its software. Ra-

bobank appears to be the largest provider of depositary services to such trustees, just as BMS apparently is the largest supplier to them of software that makes it easier for a bankruptcy trustee to manage a bankruptcy by helping him keep track of documents, distribute money to creditors, and comply with reporting obligations.

Eugene Crane, the trustee in the bankruptcy of a company named Integrated Genomics, Inc., hired BMS to provide a variety of services in Integrated's bankruptcy proceeding. The parties' contract required the trustee to hire Rabobank to provide banking services to him in the proceeding and to deposit with the bank substantially all of the funds in *any* bankruptcy estate in which the trustee uses BMS's services. A separate contract between the trustee and the bank, to which BMS was not a party, authorized Rabobank to withdraw from the funds a monthly fee for the services it renders in the bankruptcy proceeding. These contracts may have been the product of a prior agreement between BMS and Rabobank in which BMS promised Rabobank that it would require trustees who used its services to hire Rabobank and Rabobank promised BMS that it would remit to BMS a portion of the fees it obtained.

The plaintiff, a law firm, was a modest creditor of Integrated and filed a claim in the bankruptcy proceeding, at the conclusion of which it received a distribution of $12,472.55. It would have received $12,666.90 had not the trustee deducted $194.35 to pay for a small part of Rabobank's fee for providing banking services to him, and even more had Rabobank paid interest on the bankruptcy estate's deposits, which it did not.

The plaintiff alleges that the three contracts—between Rabobank and BMS, between the trustee and BMS, and between the trustee and Rabobank—violated 12 U.S.C. § 1972(1)(E), a section of the Bank Holding Company Act that states that "a bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement … that the customer shall not obtain some other credit, property, or service from a competitor of such bank, a bank holding company of such bank, or any subsidiary of such bank holding company, other than a condition or requirement that such bank shall reasonably impose in a credit transaction to assure the soundness of the credit." The plaintiff argues that by requiring the trustee in the Integrated bankruptcy to obtain banking services exclusively from Rabobank, the bank conditioned its provision of services on the trustee's not obtaining equivalent services from a competitor of that bank, and so violated the Act.

The district judge was right to reject the argument. The plaintiff fails to distinguish between exclusive dealing and a single transaction. Had Rabobank conditioned its provision of services to trustee Crane on his agreeing never to hire any bank other than Rabobank in any bankruptcy proceeding in which he's the trustee, that would be exclusive dealing. But if, as in this case, all Crane decides is that he needs a bank—not a bunch of banks—to provide banking services to him in a particular bankruptcy of which he's the trustee, there is no exclusivity; in his next trusteeship Crane will be free to hire a different bank. He may well hire Rabobank the next time too, assuming he wants to hire BMS, since BMS and Rabobank work closely together and in the present case BMS made it a condition of agreeing to work with the trustee that

he hire Rabobank. But again it would be a decision based on the trustee's needs in a new and different case, not based on a commitment made before the new case existed. Although Crane has agreed that in any future case in which he is a trustee *and* hires BMS he will hire Rabobank as well, he has not committed to hiring BMS, and if he doesn't then he won't have to hire Rabobank. The fact that he prefers to work with these two companies is not a commitment not to work with any others and therefore to deal exclusively with those two.

*Exchange National Bank of Chicago v. Daniels*, 768 F.2d 140, 143 (7th Cir. 1985), "construed [12 U.S.C.] § 1972 as prohibiting exclusive dealing practices—those that attempt to prevent customers from dealing with other banks." The customer in this case was trustee Crane. No one forced him to deal with BMS and Rabobank. He chose to deal with them rather than with other suppliers of banking services because they're highly experienced in the provision of the services that the trustee required. Suppose your doctor tells you to take an 81 mg aspirin every night before going to bed, in order to reduce the likelihood of a heart attack. So you go and buy a small bottle of Bayer 81 mg aspirin. After a while it runs out and you buy another, identical, bottle of Bayer 81 mg aspirin. And so on indefinitely. Could a competitor of Bayer sue you for engaging in exclusive dealing, because you refuse to deal with Bayer's competitors? No, and the premise of the plaintiff's suit is as flimsy.

There is another ground on which the plaintiff's claim must be rejected. The only quantified harm he incurred was the $194.35 fee deducted from his share of the distribution of the bankrupt's assets to the creditors in order to compensate

Rabobank for a share of the services that the bank had rendered in the bankruptcy proceeding—had rendered to *all* the creditors, including the plaintiff. There is no evidence, or even an argument, that the fee was exorbitant, or that it would have been any lower had the trustee been allowed to hire a different bank or a plurality of banks.

The judgment of the district court dismissing the plaintiff's suit with prejudice is

AFFIRMED.